Good afternoon, and may it please the court, my name is Philip Leiter and I represent Appellate and Plaintiff Box Lab. I would like to reserve five minutes for rebuttal if I could. You may. Thank you. Central question in this appeal is, can a tortfeasor who concedes they converted personal property refuse to return the property or its equivalent to the owner? The answer under California law is no. The defendant in this case concedes that it has 200 bitcoins, which is the property at issue, but it has always had 200 bitcoins. Wait, counsel, I'm having trouble getting on the stop. As I understand it, there's no wrongful conduct by anyone in this case. What happened was there was a mistaken credit of 200 bitcoins, and both of these businesses close out their positions just like stockbrokers and specialists do at the end of the day or within a few days. And bitcoins aren't really coins. All they are is notations in a database of credit. So there's just no such thing as I have your cow and I'm not giving your cow back. And the farmer saying, give me my cow back. It's just not like that. It's just an innocent mistake. And all that's really at issue is not whether they have to give back what was mistakenly credited and sold. It's just what value as of what date. That's how I'm conceptualizing it. And the way you put your argument, I'm all wrong on that. So just educate me since obviously, you know more about bitcoins than I do. Yes, your honor. I think the key case here is actually from the Ninth Circuit. It's best in our brief. And in that case, counsel, your audio went out. Your audio is going in and out. You might be rocking. You might be moving. But you got to point it toward the microphone. OK, I'll do my best. Please let me know if you're having to. I couldn't hear the name of the case you mentioned. It's Kramer with a K versus Cohen. Decided in 2000. And is that cited in our brief? California called Wellco Electronics. I'm also cited in our brief. And just trying to answer to your question, it makes no difference whether this is an electronic credit or dollars or a cow. Both the Kremen case. Yeah, it does. Because one is tangible and one is intangible. And Kremen held squarely that intangible property can be converted and that it must be returned if it's been wrongfully taken or wrongfully disposed of by the defendant. So Kremen went through this and basically there's no there's no question that conversion applies to intangible property under California law. The question, I think, is what has to be returned and in what sense and time? Value has to be returned because value is all that there is. There's nothing but value in intangible property such as this. It's fungible intangible property. But that's not true, Your Honor. What needs to be returned is the property, even if it's intangible. For instance, in a long line of California cases, as well as federal cases, a stock certificate has no value, but the underlying stock has value. But the defendant can be ordered to restore a different stock certificate to a plaintiff when the stock has been sold to somebody else. Counsel, let me interject a question for you because I'm somewhat inclined to look at this the way I thought Judge Kleinfeld was for this question. Like let's say that the panel were to rule in your client's favor and you were to win their case. And while it was on appeal or petitions for re-hearing, the value of Bitcoin totally collapsed because some bubble burst and the Bitcoins now, instead of being worth, let's say $20,000, were worth like a dollar and a half or so. So would it be your position that your client would be owed $200 times a dollar and a half? Now my client would not be entitled to the money that that our slaves received when they sold the Bitcoins. Yes, Your Honor. So under California law, Civil Procedure Code 667, the correct judgment in a case of this sort where liability is conceded or proven is either return of the property or its value. And it's at the election of the plaintiff. There's several cases, let's say the plaintiff decides whether it wants its Bitcoins back, even if they're worth less, or it wants the dollar equivalent in value. Counsel, I do not read section 667 to be so mandatory. First of all, it says, it uses the word judgment for the plaintiff may be in each of the sentences, it doesn't say shall be. And it also, so may connotes discretion. So I don't think discretion is, it doesn't say it's for the plaintiff to elect, it says it's discretion, which to me means discretion of the court. And then it says a return of the property or the value thereof, in case the return cannot be had. I don't know where you're getting the plaintiff elects. I mean, yes, plaintiff elects, and it must be for the possession. Yes, Your Honor. The language is as you say in the statute, but in several cases construing that statute, both the California Supreme Court and the California Courts of Appeal have said it's a must. Not a may. The trial court can't decide for the plaintiff, which one they'll elect. And the judgment must be in the alternative. Counsel, I have a follow-up question for you. It's like the same question I asked you a minute ago, but putting the shoe on the opposite foot. Let's say that you won the case in our court on direct appeal and the proceedings were pending, like on re-hearing or at the U.S. Supreme Court, then finally it gets resolved and your client wins. And then meanwhile, let's say bitcoins had inflated at super speed again, instead of being worth $11 million for the 200 bitcoins, they would be worth like 11, let's say $100 million or $200 million. Would it be your position that that specific performance would still be warranted, even if to do so is totally unjust and would put Oxlabs out of business, even though it called your client's attention to the error and offered to tender the monies it got for the bitcoins? Yes, Your Honor. A few answers to that question. It requires a few answers. First of all, my client only is asking for the return of the 200 bitcoins. If the court holds, no matter their value, if the court holds that my client is entitled to return of its property, this case doesn't include the values in dollars of the property. But it's very clear from the cases and especially the Kremen case, I'll read you the language, that it's up to the legislature to decide whether this is a fair result or an unfair or unjust result, not for the courts. As the court said in Kremen, this is at page 1035, We have not created new tort duties in reaching this result. We have only applied settled principles. And then it goes on on the same page and says, there's nothing unfair about holding a company responsible for giving away someone else's property. We apply the common law until the legislature tells us otherwise. And the common law does not stand idle while people give away. So at Common Law Council, would a party be entitled to specific performance for breach of contract or for specific recovery for tort conversion if the property in the other party's hands was no longer in their hands? Yes, Your Honor. Under California, a tort user that has committed... Your audio is gone. Sorry, counsel, but your audio is cutting in and out quite often. Probably have a directional mic. I'm trying to find where's optimal. That's a good place. Your Honor, it's clear under California law, as well as the common law that California relies upon, that yes, the defendant in a case of this sort has to restore the property. Even if they don't have it, the judgment is for return of the property. May I ask you a question? Does the same Bitcoin exist even that existed in 2015, the way it existed in 2015, given that you've had at least two hard forks in the market? Your Honor, yes, the same Bitcoins exist. They're registered on the blockchain, just like... But isn't it on a different blockchain now with a different value and called something else? No, that's the new virtual currency, for instance, Bitcoin Cash or Bitcoin Gold. The original Bitcoin are still on the same blockchain and still registered on the same ledger. Is there any evidence that the original Bitcoin that was sold by BitPay in 2015 is still on that original blockchain? It's true of all Bitcoins. Isn't it true that it could never be identified as a particular Bitcoin because it really is nothing but a credit on a ledger? There are ways, Your Honor, to do that. In fact, in criminal proceedings, the United States government has ways to do that. But no, that's... And they don't have serial numbers like hundred dollar bills. That's correct. Because there are no they, there are no things. That's correct. They're electronic, digital, credit. To me, it's, you know, if we go to what's fair, and as you suggested in part of your argument, well, gee, Oxlabs made the mistake. And if we go to the cases on stocks and stock certificates, which seem kind of analogous, and the law is pretty clear in California, I thought, unless you can correct me on this, which I wish you would, that you can get particular stock certificates back, but you can't get the shares of stock necessarily, because the shares are just credits on a company's books. And it's fungible, intangible property. Your Honor, the answer to that question is that under California Civil Code 2224, someone who concedes property mistakenly given to them becomes an involuntary trustee to the party that owns the property. And under a very long line of cases in California, that person has a continuing duty to return the property to the real owner. I'd cite in this regard the McBride v. Broughton case at 123 Palap 4th 379 at page 388. It's a 2011 decision of the Court of Appeal. It doesn't matter whether the property is intangible or tangible. The duty to return it attaches when it's mistakenly given to somebody else. This is why banks all the time, when they accidentally make... That would be the 2015 date that would support the, what, $70,000 value or something like that? Right. At that point, our position, and it has been throughout, is that they were under a duty to keep that property in trust, even if they didn't know that they had it, by mistaking that it belonged to somebody else. They had a duty to keep it in trust for my client. But instead, this is the tort, and this is the wrong, so they did nothing wrong. They absolutely did. They sold the property without authorization. Under California law, that is conversion, and it's tortious, and it can even give rise to a claim for punitive damages without us showing that they knew or didn't know. We haven't brought that claim. We're trying to be very reasonable, and we've tried to negotiate. Counsel, is there any evidence that Oxlabs would have held on to that $200 worth of Bitcoin had it not mistakenly transferred it to BitPay? So it's 200 Bitcoins, not $200. 200 Bitcoins, right. So the best evidence I can give you, Your Honor, is that that Bitcoin is now worth $11.5 million. And the reason that's true, that we would have kept it, my client would have kept it, is because like BitPay, Oxlabs trades for itself, not just for its clients. And it knows that Bitcoin has risen exponentially over time. But only recently, right? I mean, only in about the last couple of years that it's been exponential or really surprising people. I mean, I've just read an article in the Wall Street Journal about that. No, it's risen tremendously the entire time, but really eye-popping lately. You're quite right. But even when the defendant came to our client and said... Wait a minute. Wait a minute. Go back to the answer you just gave. You say the evidence that they would have held on to it is that Bitcoin's been a great asset for a long time. Is there any declaration or other evidence in the record that shows that BitPay held on to any Bitcoins or that Oxlabs held on to any Bitcoins? I thought they were both trading facilities. So that, say, a marijuana store gets paid in Bitcoins and it wants its cash so it can pay the landlord. And so it uses BitPay to swap its Bitcoins for cash. And Oxlabs buys and sells Bitcoins for people that want to get rid of their Bitcoins or buy Bitcoins. Is there any declaration or other evidence in the record that either one of them holds on to Bitcoins for years? Your Honor... You just said that that happens, but I don't recall anything in the record that substantiates what you just said. Your Honor, first of all, that's not a requirement to complete the tort or to show damages. So there was no reason for that to be in the record. It was going to come up at trial with respect to the damages. And we had the CEO and other co-founder of the company prepared to testify that they would have held on. You're saying they were prepared to testify. I noticed you carefully avoided saying that they testified. There was no trial. That's the problem. That's what I wanted to really underline it and answer your question. We're entitled to a trial on that question. We have evidence. We were prepared to... This was just about to be tried when judgment was entered. All right, counsel, you're almost five minutes over your time. And so why don't we hear from the other side? From BitPay. Okay, you're muted, Mr. Kunin. I am sorry, Your Honor. I just wanted to say by introduction that during that presentation that I did have momentary internet lapses, and I apologize if that occurs. And I also want to give my gratitude to Mr. Leiter for being one of the most professional attorneys I've dealt with in this practice of law, and that should be commended. I'd like to say a couple of things as an introduction, some of which I think the panel is aware of. This all arose out of an erroneous deposit by Axelad in Bitcoin's account. It wasn't by Bitcoin. I'm sorry, by BitPay. BitPay found the error. BitPay reported the error. And the only evidence in the record insofar as what happened to this Bitcoin is in the two declarations of Tony Gallippi, who makes it very clear that there are two different types of accounts. One is the customer trading account where this went to, and the trading is asynchronous and occurred on that day. And even if the court did not want to believe that day, all three of the accounts that were used as customer trading accounts were on July 14th, in which all the accounts hit zero. So if we go back to the statement of refuse to return the property, that presumes the evidence that there happened to be the property. And this leads to, in addition to the law, in addition to the facts, some pretty significant public policy issues here, which is we want financial institutions to be responsible. The error was by Axelad's. The correction was by BitPay. And if they were to prevail, they would be prevailing on shifting the risk of investment over to the innocent party. And if you take that to its logical extreme, you can imagine the couple that spent its life building a 401k finds out one day that there was an erroneous deposit and quick sale of some security. And now somebody's coming back and saying, well, conversion's conversion. We'd like that security back and wipe out their entire life savings. That can't be the proper result. So to repeat what I think Judge Kleinfeld said, we're not talking about cows. We're talking about Bitcoins. And these Bitcoins were liquidated. And when you get to the issue of, is there evidence that Oxalabs would have held on to this? Remember, Oxalabs is in the trading arena as well. It was case cited by the court. And it was a case, and I'm in the underlying court, and a case cited by us. One was Domenick versus Donahue, 165 Fed Appendix 554, Ninth Circuit, 2006. And the other one is a Newhart versus Pierce case, 254 Cal App Second, 783, 1967 case that said that it was up to the plaintiff to show that they still would have had the property at issue. And so what's really occurring here is if we were talking about the purchase of unique artwork, for example, and accidentally an extra piece of artwork was put in there, the lot was sold, we'd be hearing get it back, get it back. Well, here we're being told because Bitcoin has a different kind of name to it, almost like substituting certificates as was mentioned before, well, then just take one of your other certificates. But to be really clear, this is not the situation where BitPay was inadvertently credited 200 Bitcoin, and that 200 Bitcoin is still sitting there today, such as if it gave back that 200 Bitcoin, it's no better than it was, no worse than it was. It traded as it got these Bitcoins, and that's only evidence in the record is that they traded those Bitcoins and what they got out of this particular error was $57,000, which they opened their own mouth, which is what we want our corporations to do, said this is what occurred. In fact, the record evidence shows that they even asked, can you please check your records for these particular days? Because we think that there was an erroneous deposit of Bitcoin, and this is the amount that was realized, which is about $57,000. You add the interest, that's how you get to about $70,000. And any other result would be unjust, contrary to the law. Let me touch on the law briefly. This was mentioned by... Can I ask, Mr. Kuhn, when did BitPay discover the error? When they did an audit in February 2017. Okay, February 2017, what was the value of Bitcoin? I don't recall exactly at that time, but it was probably around 400,000 if I would have been sure. Yes, but please don't hold me to that. But it was significant. So the value of 200 Bitcoin? Correct, correct. Did Oxlabs ask you to give them 400,000 at that time? They wanted the 200 Bitcoin back. They made the same simple argument that's being made now, which is we accidentally gave you 200 Bitcoin, all we're asking for is 200 Bitcoin. But the Bitcoin had been already liquidated at a much lower value. So if I were to take Nike as an example, I buy 100 shares of Nike at $100, and I sell them for 105 back in 2015, I make $5 a share. They're trying to take advantage now saying five years later or three years later, Nike went up to $130. And I went back and I bought Nike. Okay, great, then give me those. So I have taken the burden of their investment risks. And I personally find it bothersome if I were to invest in whether it's UBS or JP Morgan Chase or Schwab to have them turn around and say, listen, trust your money with us. But don't worry about it. If we make an error, we'll charge you for our error. That's not a very comforting feeling to the public. And that's exactly what's occurred here. And I'm very confident we wouldn't be here had Bitcoin stayed about the same where the price went down. We're only here because Bitcoin went up and they're shifting the burden over to BitPay, which was not the creator of this error and found it during their own audit and self-reported it. And so I don't know what much more to say about that other than if you look at almost every case that was cited that talks about restitution. Your Honor, Judge Wardlock, you said 667 is not so mandatory as far as the choice. And other cases that were cited throughout both the reply brief and the initial brief, all are based on actually having the property to return it, not, oh, I accidentally got a Corvette worth $20,000 when it was supposed to be worth 18. I sold it for $20,000. Now I can get the same Corvette for 40. So it's your obligation to go out and now pay 40 when I'm not the one who made the mistake. And I'm not aware of any case that was cited that stands for the proposition that they simply get to sit back and say, sorry for our error, but the price has gone up and we'd like you to go out and make up for our error and now reacquire, whether it's a Bitcoin, a stock certificate, a car, a piece of artwork, a cow, and give us back that same amount of money. And there was one statement that I think is worth repeating and had to do with the stock certificate. One of the cases, and please forgive me for it being blank on the name. One of the cases had to do with the liquidation of some stock and the court ordered assignment of different stock to compensate for that. That was a situation where two people had 50% incorporation. So what the court was ordering was 50% incorporation. It didn't necessarily have to be the identical stock, but they had the stock that represent the value that represented that particular asset. That's not what we're talking about here. We're talking about something that changes in value. It's changed dramatically, which drives the point home about how unjust a result would be other than what Judge Fitzgerald gave, which I'm not going to repeat Judge Fitzgerald's order. Obviously, I agree with it, but it was a very long and very well-reasoned order that went through the law and why he was finding what he was finding and noticed all of the undisputed fact. But at the end of the day, a dollar is a dollar is a dollar is a dollar. And what you compensate for the dollar is to add interest to the dollar, which is exactly what has occurred here. This is not a situation where you're trading a share for a dollar or a bitcoin for a dollar or a euro for a dollar. This is a situation where we were given an asset. It was sold. We didn't know about it. It wasn't our error. Interest has been added on to that. And so to go back to the first statement that I heard during Mr. Lutter's argument, but they refused to return the property. It's because at the time this error was discovered, we didn't have property. Your honors, I see. I have if I could interject a question or two. Am I correct that the result here is governed by California law? Correct. And second, does the provision that Judge Wardlaw mentioned about remedies in the case of conversion, does that give discretion to a trial? It does. And I'd like to add one thing, if I can, Your Honor. The conversion statute is actually 3336 and says absent unusual circumstances that were not found here. The value of the conversion is the value at the time of conversion plus interest, which is what the award is for. 667 is a judgment statute. And what it does is it gives an option to the court. Now, again, I'm going to reflect back on the fact that restitution simply isn't available, which means only damages are available. And I'd like to give two additional sites, if I can, to the court. Both of these have to do with even if the court were determined that somehow restitution is available, which again, we don't think it's possibly available because the sole evidence is that these bitcoins were disposed of. But even if the court were to decide restitution, the court still has discretion in order to fashion the appropriate restitution remedy. One of those is taxpayers for accountability taxpayers for accountable school bond spending versus San Diego Unified School District. And it's found at 215 Westlaw 363-2307. That's a 2015 California public decision. And the other one, which says equitable rulings, such as the question of whether to award restitution are matters within the trial court's discretion. And that's Smith versus First Principal Church. Located at 2011 Westlaw 2643, I'm sorry, 318. And that is also a California public decision, 2011. By the way, these are two of the newest cases that are in any of the parties. Most of these cases are pretty old. Is the restitution for conversion clearly inequitable? Is it an equitable remedy? As I read those cases, restitution is an equitable remedy. And I still default back to, but it's not even available here because the property was already disposed of pursuant to the undisputed evidence, which are the two declarations of Tony Bolivi. And so it's not available in the first instance. But even if it were available, it would still be discretionary. Thank you. So your honors, I do have... I'm kind of curious about a hypothetical case, not this case, where there's tangible property. Suppose an art dealer closes out its business and sends a whole bunch of paintings and sculptures to Sotheby's or Christie's to auction off. And unbeknownst to either one of them, whoever packed up the paintings just made a mistake and sent one that wasn't supposed to be sent. And Sotheby's auctioned it off at its scheduled fall or spring auction. And then a couple of years later, the art gallery discovered it had made a mistake and auctioned and sent for auction a painting that wasn't meant to be sent. You see, of course, this is analogous to this case, except it's tangible and not intangible. And I'm thinking plaintiff's theory would mean that Sotheby's has to go out and find the painting, even though it sold it. And the person it sold it to was probably another art dealer who may have sold it himself. Often they only buy at Sotheby's auctions because they already have a customer. Value, of course, could have changed. Where it's tangible in that circumstance, does Sotheby's have to go out and find the particular painting and buy it for whatever they can buy it for and give it back to the gallery that mistakenly sent it for auction? Your Honor, I'm not aware of a case directly, although some of these cases sort of speak to that. But I have two responses to it. One is that was an error by the art gallery here. There is no allegation that they made the error. The error was by Oxlabs, and it was analogous to the error by the art gallery in my hypo. Right. And then secondly, once the gallery has lost control of it, I don't know how a court could force them to get it back, but rather the value that they obtained from it. I see my time is out. Unless there's any other questions, I appreciate the panel. Okay. Thank you very much, counsel. I'll give you a minute to add something, Mr. Leader. I'd like to start with the last part, whether it's discretionary, and the court gets to decide. The California case is absolutely not. No. The judgment has to be for return of the property, if it can be had, for its value. And so... Counsel, I'm interested why you haven't addressed section 3336, which is the one with the presumption. It says the detriment caused by the wrongful conversion of personal property is presumed to be, it says first, the value of the property at the time of the conversion. Why doesn't that answer this? The answer is that the next measure of damages, if we're going to talk about damages, that and under the case called Guerin v. Crisp, 30 Cal 2nd 402, that second provision applies when the value,  Counsel, every time you lean back six inches with your head, I can't hear what you're saying. No, I can. I apologize, Your Honor. The answer is that the second provision in that statute applies as to damages. How? It says wrongful act. There has to be a wrongful act. But here, the closest thing to a wrongful act was a mistake by Oxlabs. No, it's a mistake by BitPay, but there's a clear line of authority in California that says it's wrongful. BitPay had no duty to Oxlabs to ever do an audit. And if BitPay had never done an audit, nobody would even know about this. BitPay had a duty to return property that it received mistakenly. And it converted that property. There's no issue on appeal. The wrongful behavior is the conversion that they've conceded. They sold property they don't have title to. That's conversion under California. All right. Thank you, Counsel. Oxlabs versus BitPay will be submitted. And we will take up the next case, Sandler Partners versus Masergi Communications.
judges: Kleinfeld, Wardlaw, Gould